All right. Next case is 23-5069, White v. Brown. Ms. Crabb. Thank you, Your Honor. May it please the Court. I'm Jennifer Crabb. On behalf of the Warden with me at Council Table is Oklahoma Solicitor General Gary Gaskins. The Supreme Court has repeatedly described 28 Section 2254D as, quote, the only question that matters in a habeas case. And this Court has said that it provides, quote, an unavoidable legal question we must ask and answer in every case. And there's no dispute that the burden of overcoming that AEDPA deference rests squarely with the petitioner. In this case, however, not only did petitioner not argue below that the Court of Criminal Appeals had declined to decide his Hicks claim on the merits, he actually argued that he could satisfy 2254D too, therefore implicitly agreeing that AEDPA deference applies in this case. And yet, contrary to many of this Court's decisions, the District Court decided sua sponte to determine whether the Court of Criminal Appeals had reached the merits of the Hicks claim and held that it did not. In Meek v. Martin, a very recent case by this Court, this Court said that it cannot make arguments for a party. In Hancock v. Trammell, exact situation here, it was a Hicks claim, and the petitioner claimed, exact except that the District Court didn't raise this, the petitioner claimed for the first time in this Court that the Court of Criminal Appeals had not reached his due process claim, the Hicks claim. And this Court said that that claim was forfeited, that argument was forfeited, because it had not been raised below. And then the petitioner had not sought plain error review, and so this Court did not look at the question at all. In Williams v. Trammell, same thing, an argument that he had had two ineffective assistance of counsel claims. The Court of Criminal Appeals explicitly decided one of them, not the other. Williams did not claim that 2254D did not apply. This Court says that he offers no argument why the Johnson presumption should not apply, and therefore it does apply. Do you recall Judge Lucero's opinion in Smith v. Sharpe? Yes, Your Honor. Could you address that? Why doesn't Smith v. Sharpe allow Judge Egan to do what she did? Because it's a different context, Your Honor. In Smith v. Sharpe, it was an Atkins claim, and there are three prongs, as this Court knows, to an Atkins claim. And so in Smith, the Court relied on Rompia v. Beard and Wiggins v. Smith, two Supreme Court cases dealing with ineffective assistance of counsel claims, and the Strickland test has two prongs. And the Supreme Court said, before Richter was decided, said, when a state court decides either prejudice or deficient performance, but not the other prong of Strickland, our review of the prong they did not address is de novo. And that's what the Court was following in Smith. And again, it's a multi-prong test. The Court said that the Court of Criminal Appeals had not reached, and I apologize, I can't remember which prong it was, but had not reached one of the prongs, and therefore gave that prong de novo review. That is a different question than whether the state court decided a federal claim on the merits at all. And that is controlled by Hancock. And then having suesponsed... If we do, even at the deference, here you have the Hicks claim is that basically the Court of Criminal Appeals has changed the rules on finality for this one particular defendant. And ultimately, that's a demonstration of arbitrary and capriciousness. Because of the factual scenario here, which is certainly unusual. Would you address why this kind of class of one situation is not arbitrary and capricious? Of course. I would first argue, Your Honor, that Petitioner did not below make any D1 argument. And that's dispositive of the question that you've just asked. But of course, I will also address the merits of it. And that is that Hicks does not constitute clearly established law in this particular context. This Court has noted, as has the Eighth Circuit, as I cited in my brief, that Hicks pertains to sentencing claims. This is obviously not a sentencing claim. And this Court cannot construe Hicks at such a broad level of generality, as this Court said in the unpublished decision in Mitchell, as to make it apply to any time that the state court does not, purportedly, does not follow its own law. And so, here, Hicks is just nothing. It's not remotely on point. That's what this Court said in Cole. That's what this Court said in Mitchell. If you want me to get into, you know, we didn't argue, our only argument as to de novo application of Hicks is that this is purely a question of state law. And that the Court of Criminal Appeals, having decided that state law permitted the district court to reverse its order grant in post-conviction relief, that's the end of the matter. Because this Court cannot second-guess the Court of Criminal Appeals on matters of state law. Now, I can address what we didn't do in our brief, and I can address if you'd like me to, and I can do a 28-J if you'd like, would be, is this a substantive due process claim? Is it a procedural due process claim? What are the standards that apply? Before you create more issues for us, let me ask you about, what if Judge Priddy had waited, let's say, 10 years, instead of working when he did? Would that have triggered Hicks, created an obvious constitutional violation to deprive someone of their liberty, when so much time had passed? Right. There is still, Your Honor, no clearly established law on point. Now, it's possible Petitioner could try to raise a HEC claim, a 1983 claim under HEC, where habeas is just not available. However, that's, of course, Your Honor, not the facts here. It was done very promptly. Whether or not that could ever, the time period could be so long that due process would be violated is just an open question. But it's not one, and because it's an open question, it's not one on which, excuse me, habeas relief can be granted. Can I just ask, I don't know if it's a similar question, it's a time question again, but what if Matloff against Wallace hadn't been decided until several years after it was on April, or several years after the April 8 order? Right, right. Would that make a difference? It's a harder case, Your Honor, and the Court of Criminal Appeals grappled with that. I did the oral argument in the Niesbitt case. However, we have to presume that if the Court of Criminal Appeals were faced with a situation like that, that it would follow the Constitution, and it would reach the right result. And as I said, there is no here clearly established law. Now, would the Court of Criminal Appeals have found a due process violation? I don't know. Maybe they would have, maybe they wouldn't have. But certainly there's no federal law that would require them to do so. Can I get back to the 2254-D1 issue? If we do hypothetically say that Ms. Graham did not waive the argument for the double review to bypass 2254-D1 and entertain Judge Egan's argument, what is wrong with her argument that here the presumption under Johnson had been rebutted because the Court of Criminal Appeals had identified the state claims and had rather conspicuously not identified Hicks or identified any federal basis for the claim, which in her view, I think, differentiates our situation from cases like Fairchild, which you cited, or Pestel, in which, almost like what you were arguing with regard to distinguishing Smith, where the courts have said that, well, if there's nothing that, you know, if it's just a summary order, then we're just going to assume that the state of Delaware court had adjudicated the merits of all of the claims, including the federal claims. But I haven't run across any cases that we have that have addressed, really, the rationale of Judge Egan for or against her rationale. Well, I think, Your Honor, that it's exactly what happened in Johnson v. Williams, which is that the petitioner presented a state law claim and a federal claim, and the state court expressly adjudicated only the state law claim, and did not even mention the federal constitutional claim, as here, also as in Pestel and Fairchild. And so I think this is squarely on all fours with Johnson v. Williams, and there are two reasons that Johnson controls here. The first is that, in Johnson, the Supreme Court said, Williams presumably knows her case better than anyone else, but she didn't argue that the state court did not decide this claim on the merits. And that, excuse me, I'm just going to grab some letters. So sorry, that makes the thought that there was an oversight most improbable. The same is true here. Petitioner did not argue that the Court of Criminal Appeals did not decide his sixth claim. He, like Williams, presumably knows his case better than anyone else, but he did not make that argument. And secondly, in Williams, it was, I believe, a jury instruction claim, where the state law and the federal law claims were intertwined. The same is true here. In fact, the Hicks claim depends entirely on whether petitioner got everything to which she was entitled under state law. And so when the Court of Criminal Appeals decided that state law permitted the Tulsa County District Court to reinstate the judgment and sentence, it necessarily resolved the Hicks claim. And that's what the Supreme Court said in Johnson versus Williams. There are circumstances in which a line of state precedent is viewed as fully incorporating a related federal constitutional right. In which case, the state court, quote, may regard its discussion of the state precedent as sufficient. And so it's for that reason that under Johnson versus Williams, the presumption has not been rebutted. Could I ask you to look at this through the D2 lens? Of course. Okay. So just to set this up, we have April 7, 2020, Bossie becomes final, mandate issues. April 8 is when the district court granted relief, vacated the judgment, released this grant. Next day, OCCA grants an emergency motion to recall the mandate. Then down the road, we have the OCCA opinion in this case. And my question is this, the OCCA said that the district court's April 8 order was unauthorized. Now, that can't be right on April 8, wasn't authorized on April 8. So isn't that a mistake of fact, an unreasonable determination of fact by the OCCA? No, Your Honor, it's not. Because it was unauthorized by law because of Matloff. Because McGirt cannot be applied retroactively. It didn't have anything to do- But that hadn't been decided yet. Correct. And same was true in the Matloff case itself, in which the court issued a writ, an extraordinary writ, finding that the order granting relief in that case was also unauthorized by law. And I would like to- Well, I'm not following. Okay. How can it be unauthorized by law under a case that hasn't been decided? I mean, on April 8, wasn't that a valid order on April 8? It's a one-day situation, I get that. But what was wrong with it on April 8? As this court knows, the judges do not make law, they decide law. So McGirt was not supposed to be retroactive at any point, including on April 8. Now, the Court of Criminal Appeals had not yet- Well, no, nobody had said that yet. Correct. And we have Bossie, which said just the opposite. The court was just following Bossie on April 8. How could that be unauthorized by law? It was authorized by Bossie. Yeah, well, Your Honor, I think, for one thing, I would say that that's a question of state law. What is unauthorized by law in Oklahoma? But if I could point you directly to the Court of Criminal Appeals' decision in Ms. Graham's case, they never make mention, the majority never makes mention of whether the mandate in Bossie has issued or hasn't issued. And that simply was not a part of their order. In fact, in the Niesbitt decision- But counsel, the mandate had issued. It had, it had, yes. But that wasn't, they didn't make their decision on the premise that the mandate had not issued, which is what Petitioner argues and what I think the district court found. But that's not in their decision at all. There's, there are two paragraphs- I'm just talking about whether their conclusion that the order was unauthorized by law was accurate. Right, as they- Was it accurate or not on April 8? Setting April 8 really doesn't have anything to do with it is what I'm, is what I'm trying to argue, Your Honor, because it's a question of law. Was, could McGirt be applied retroactively regardless of when Bossie was or was not mandated? As I said, in Matloth, the court granted the writ regardless of the Bossie mandate. In Niesbitt, the court actually discussed the mandate in Bossie and said it had never issued. And Ms. Graham filed a supplemental brief in the Court of Criminal Appeals- But it had issued. It issued on April 7th. Correct, and that's, and that's where I'm going with this. And not only that, the attorney general declined to appeal the Graham decision because it fell down by Bossie, right? I see that my time is up. May I continue? Yeah, actually, the district attorney, yes, declined to appeal. However, the decision in this case itself had nothing to do with whether the Bossie case had mandated or hadn't mandated. It was based on, if I could read, it's page three of the court's opinion in this case. Because the convictions in this matter were final before McGirt, the holding in McGirt does not apply, and the district court's order was unauthorized by law, seeing that law. The only discussion of Bossie is when they say that this is, that, excuse me, let me set up the proper context for that. When they say that erroneous judicial relief can be corrected. This is so even when the post-conviction decision is not timely appealed. And then they say it's particularly so here, given the misdirection our original decision in Bossie gave the district court and the parties. But it doesn't have to do with whether Bossie was good law on the eighth. In fact, the court here, the district court, granted post-conviction relief orally before the mandate in Bossie issued. The judge said, you know, we've been staying all of these cases waiting for Bossie. Bossie has been decided, so I'm going to grant relief. It appears to just be happenstance that the order was entered on April 8th. Well, I don't know that it particularly matters, but I've always assumed that he orally announced it because there was a conspicuous delay between the 26th and the 8th. I assume that he was waiting for the mandate in Bossie to issue before he entered his written order. There's no evidence of that, Your Honor. And when you look at the Tulsa County docket sheet in this case, it happens quite a bit that there is a hearing at which an oral decision is rendered. And then it takes at least several days before a written order to be entered. So I do not believe that there is any connection between the two here. Anything else? Thank you. Time's expired. Thank you, Your Honor. Good morning. My name's Richard O'Carroll, and it's my privilege and responsibility to represent Ms. Graham. Could you move the mic a little closer to your mouth and speak? Pardon me, sir. It's my privilege and responsibility to represent Ms. Graham, the appellee in this particular case. And could you enter an appearance also? Say again, please? Enter an appearance. Richard O'Carroll. I'm sorry. I did that. Nerves. Let me pick up right where the Attorney General, Ms. Graham, left off. The reason that the trial court judge, Tracy Priddy, told the state how she was going to rule was because of the Victims Crime Act, Marcy's Law. And they were entitled to know that. And they'd all come down for the hearing. And also, the reason that she said how she was going to rule was the fact that the Attorney General had done a petition for a re-hearing on Balcy, which is prohibited by the rules. And at the time, I was thinking they're going to grant the re-hearing, and they didn't. So we anticipated Balcy came down. The Attorney General, the same day or the very next morning, did a petition for re-hearing. So that engendered the delay. So that's the reason that she announced how she was going to rule. It had been briefed and argued before that many times. And understanding that this court had an interest in the 2254D, where Judge Egan makes her de novo findings, that came about. Obviously, it had to be done. And the case law says, and she cited the case law, that it says it has to be done. And there must be some determination of it. And this is not a situation where the state issues subsumed the federal constitutional issue. Quite the opposite. The unauthorized finding by the Court of Criminal Appeals was untrue. But can I ask you a question? Yes, sir. I don't mean to interrupt you. But when you say it was untrue, was it untrue under state law or under federal law? Does it make a difference? Well, I wonder if it might. So if the Court of Criminal Appeals makes an error in saying that Judge Priddy, you really didn't have the authority to do that. It's not like we have a rule of civil procedure 60B6 in civil cases, where you can do things after a judgment to modify an order. But if the Court of Criminal Appeals said, Judge Priddy, you made a mistake under state law. You didn't really have the authority to do that. And the judge did. Well, that's just state law. You don't get habeas corpus for that. Is that a problem with your argument? Well, you do get habeas corpus if you manipulate the state rules to deprive somebody of a liberty interest, which had vested with her at that time. After April 8th, she is released. And she's walking around untethered in any form or fashion to the government. Can I probe this a little bit more? So what if there was a rule of criminal procedure that said that a district court can modify his or her order, say, up to one year after the issuance of an order? Sort of like what we have in civil cases. Would it still have been a violation of due process for the Court of Criminal Appeals to do what it did? Well, answering it as best I can on my hind legs here, I'd say, yeah, because now you're on notice. Due process, as the Court's well aware, is all about notice and a meaningful opportunity to be heard. So you'd be on notice. And Ms. Graham was relying on the decades of precedent. I think there were, in the exhibits to the trial court and to the Court of Criminal Appeals, I quoted every case I could find. And they were, I think, in the double digits about this finding, dismissing a case on a post-conviction is the same as if a jury acquitted, is what Judge Lumpkin said years before this happened. So wasn't there an OCCA case that more or less allowed a post-conviction relief to be modified after the appeal period had passed? I think one of the cases was Anderson. Anderson is the case. And it came out of Sequoia County. But both parties agreed. Because in that case, there were four other decedents in that case that were dismissed with prejudice. And they had a 10-to-life sentence on a guy who was apparently very, very guilty. And the defense lawyer wanted it. And he agreed to it. It was favorable to the defendant in that context. And that's what a case like the, excuse me, would that, the principle of that case, though, put your client on notice that a final judgment might be clawed back? I see your point. But it's not a slippery slope. It's a free fall off a cliff. Once you don't have finality under the law, you've got, we've got two statutes that Judge Egan cited saying that an unappealed order is a final order. We cited numerous cases before the others that this is what it is. And then you've got one agreed to situation that didn't get there. It really didn't get there. And if you'll remember, the Court of Criminal Appeals asked the attorney general to do, to have the district court could reacquire jurisdiction. And then they eventually ruled that they never lost jurisdiction. And that was in the Nesbitt case that came down in the intervening time. There was a joinder of about 12 cases, a dozen, literally a dozen cases. And there was a style on it. And one size fits all. And Ms. Graham was the only one that had the April 8th date. So this is narrowly tailored to Ms. Graham. And she was fortunate to get it. But it is what it is now. And I would suggest that it is way worse than a slippery slope if we start saying final orders can be reopened at any time. Well, you know, is finality required under the federal constitution? I mean, you know, as Judge Bacharach, you know, a one year or maybe, maybe not, you know, no limitation on a, on a new order. I think finality may not. Is that a constitutional problem here? Or is it just a feature of state law, state law that we don't, that we might object to? Because the principle behind finality is really, you know, an important one in our system. I understand what you're saying. And the short answer would be, if it was, as I think I told the court a moment ago, if there was a statute that said that, then it would be noticed. But it was the deprivation of notice that becomes the due process problem. And that's, that's where she was caught up in that because she was unfettered. She was walking around. Those 30 days passed for doing a petition in error, which is jurisdictional. It's over. One thing that people usually argue with notice is, and an opportunity to be heard. Meaningful. Yeah. And so when you're denied notice that you didn't have an opportunity to present some argument. So it was their prejudice from the lack of notice in itself. In other words, what would Ms. Graham have done differently had she had noticed that Judge Priddy's release order could be modified? Well, I would have been involved in every case. And I would have put resources to the Matloff case, which was on its own terms a violation. Even taking away the ex post facto argument. For instance, Leon, I use that example. So the court changes the law on the exclusionary rule and puts a good faith. They didn't go out and re-arrest everybody else that had been released on that. But in this particular case, if she did have notice, then I could have dealt with the cases that were burgeoning up. And that was a case that shouldn't have gotten to where it should. It got to because the court rules. In Matloff, they come along and they say, no problem. You didn't file a petition in error. Since you have no remedy at law, we're going to grant an extraordinary writ. When, in fact, there was a remedy at law. And that was that they could file with the district court judge leave to appeal out of time. Counsel, on the due process argument, if we get to that, there's procedural due process and then there's substantive due process. It seems like we've been talking more on the procedural due process side the last few minutes. Notice, opportunity to be heard, that sort of thing, as opposed to substantive due process, which goes to fundamental fairness. Now, what is your due process argument? Is it procedural, is it substantive, is it both, what is it? Chapman, they kicked down the guy's door, they pumped his stomach. That's the substantive due process as I understand it, back in the 50s. And they accuse him of dealing drugs because they got it out of his stomach. That's substantive due process. And it shocks the conscience. And that was the finding that the trial judge made. Well, that's different from your notice and opportunity to be heard, correct? So you're arguing both. My argument is that the lack of notice and opportunity was so egregious. And the changing of the rules in the middle of the game was so egregious, as the trial court found in this case, it shocked the judicial conscience. Let me back up and just talk about AEDPA for a minute. You have the burden, or had the burden, of overcoming 2254-D. Yes, sir. D-1 has to do with unreasonable determination under clearly established Supreme Court law. And D-2 has to do with unreasonable determination of fact. Are you saying you've overcome that AEDPA deference requirement on D-1, D-2, or both? And how have you done it? Unreasonable determination of fact, by using the word unauthorized, when in fact it was authorized by law. And that's where the trial judge, Judge Egan, hung her hat as I read her order. And she said she would have gotten there anyway in a footnote in her order denying the application for stay. She said, I had to look at that at one stage. And it turned on the notion that not only did they tender a falsehood, but they talked about it as if they protested that this wasn't a feel-good decision, the majority, in this particular case. So facts pushed the law. And a Higgs claim, that is especially true. And when you have egregious facts, you don't have to go out and say everything in detail is wrong here. Because coming in, it's an anathema to come in and to apply a new rule after the fact. And it goes against the core of everything that we learned in law school. And the facts were laid out very plainly before the trial court, including all the quotes from the dissenting judges who apprised the majority of the problems of the constitutional issues. I mean, Judge Lumpkin put the golden day, April 8, in a footnote. Now, Judge Hudson was out there saying this isn't a feel-good decision. But in truth and in fact, the circumstances, I would suggest, would indicate that he was aware April 8. It wasn't unauthorized. It was authorized by law. Bossie was the law of the land for one day. And I can't imagine that Judge Hudson wasn't aware of what Judge Lumpkin wrote in his dissent. So if judges are making false findings of fact, then I think everybody should view it as egregious. And that's what happened here. So it's a substantive due process violation because of that. Thank you.